UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO ELIZONDO,

                    Petitioner,

                                                    Case No. 12-15443

v.

                                                    HON. AVERN COHN

CATHERINE S. BAUMAN,

                    Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
## AND
## GRANTING IN PART A CERTIFICATE OF APPEALABILITY

### I.  Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Mario Elizondo

("Petitioner") is a state prisoner at the Thumb Correctional Facility in Lapeer, Michigan.

He was convicted of first-degree and second-degree criminal sexual conduct and is

serving concurrent prison terms of twenty-five to fifty years and one to fifteen years,

respectively.  Petitioner claims that other "bad acts" evidence was erroneously admitted

at his trial without notice, that the prosecutor's remarks deprived him of a fair trial, and

that the trial court pierced the veil of judicial impartiality by assuming the role of a

prosecutor.

Respondent Catherine S. Bauman ("Respondent"), through the Michigan

Attorney General, has filed a response to the petition, arguing that Petitioner's claims

were not exhausted in state court, are not cognizable on habeas review, are

procedurally defaulted, or do not warrant habeas relief.

The Court held oral arguments on Petitioner's claim that the trial court pierced the veil of judicial impartiality by assuming the role of a prosecutor. The parties subsequently filed supplemental papers. The supplemental papers have been received. The matter is ready for decision. For the reasons that follow, the petition will be denied. However, the Court will issue a certificate of appealability on Petitioner's judicial bias claim.

## II. Background

The charges against Petitioner arose from allegations that he engaged in sexual activity with a young girl, whom the Court will refer to as "K.M." The Michigan Court of Appeals provided the following brief overview of the facts:

> In 2010, 11–year–old K.M., her three older brothers, and her mother resided with 53–year old defendant and his wife and children due to financial reasons. In September of that year, defendant and K.M. were in his room putting together a puzzle when defendant pushed K.M. down on the bed, removed K.M.'s pants and underwear and his own, then began touching her genitals. Defendant had K.M. touch his genitals as well. Defendant's wife walked into the room and began screaming when she saw what was happening, at which point K.M. went downstairs and told her mother what had just occurred. K.M. was taken to a hospital and examined, and the police were notified.

People v. Elizondo, No. 303333, 2012 WL 2335910, at *1 (Mich. Ct. App. June 19, 2012). The Court of Appeals also provided the following additional summary of the testimony at Petitioner's jury trial in Wayne County Circuit Court:

> Melissa Elizondo, defendant's wife, testified that she saw the victim and defendant facing each other on a bed and that both were naked from the waist down, kissing each other. The victim was touching defendant's genitals. Melissa further testified that defendant told her he was in love with the victim and that since they were all going to die in 2012, the victim would not have the opportunity after that. The victim's mother testified that the victim told her that defendant forced her to touch his penis and that he touched her vagina, and the victim also testified to the events of

2

> that day.  The prosecution presented evidence that defendant confessed
> to Nancy Doss, the Child Protective Services worker, that he penetrated
> the victim's vagina with his finger.  The prosecution also presented
> evidence that defendant told the victim's brother and Officer Craig
> Cieszkowski that he was in love with the victim and that because the world
> was going to end in 2012, she would not have an opportunity to have such
> an experience.

Id. at *2.  On February 10, 2011, the jury found Petitioner guilty, as charged, of one

count of criminal sexual conduct in the first degree, see Mich. Comp. Laws § 750.520b

(sexual penetration of a person under thirteen years of age by a person seventeen

years of age or older), and one count of criminal sexual conduct in the second degree,

see Mich. Comp. Laws § 750.520c (sexual contact with a person under thirteen years of

age by a person seventeen years of age or older).

At Petitioner's sentencing on March 8, 2011, a substitute prosecutor informed the

trial court that the trial prosecutor failed to strike a statement from K.M.'s medical record

and sent the unredacted copy of the record to the jury.  The substitute prosecutor

maintained that the error did not change anything because there was overwhelming

evidence of Petitioner's guilt.  Defense counsel, however, moved for a new trial on the

ground that the evidence was prejudicial.  The trial court responded without elaboration,

"The Court is going to deny that."  The trial court then sentenced Petitioner as described

above.

In an appeal of right, Petitioner raised the following claims:  (1) the trial court

erred by not granting a new trial based on the prosecutor's admission of other "bad

acts" evidence in the unredacted medical record; (2) the prosecutor's closing arguments

violated his right to due process of law and a fair trial; and (3) the trial court pierced the

veil of judicial impartiality and deprived him of a fair trial by taking on the role of the

3

prosecutor.  The Michigan Court of Appeals rejected these claims and affirmed

Petitioner's convictions in an unpublished, per curiam opinion.  See Elizondo, 2012 WL

2335910, at *1.

Petitioner raised the same claims and one additional claim in the Michigan

Supreme Court.  The additional claim alleged that the unredacted statement in K.M.'s

medical report was inadmissible and irrelevant evidence and more prejudicial than

probative.  Petitioner also claimed that he did not have an opportunity to challenge the

evidence before it was admitted.  On November 20, 2012, the Michigan Supreme Court

denied leave to appeal because it was not persuaded to review the issues.  See People

v. Elizondo, 822 N.W.2d 778 (Mich. 2012) (table).

Petitioner then filed the instant petition through counsel.  Petitioner raises the

following claims in an amended petition:

> I.  The trial court erred in not granting a new trial where the prosecutor
> admitted prejudicial other "bad acts" evidence through unredacted medical
> records and denied Petitioner his due process right to a fair trial;
>
> II.  The prosecutor's arguments to the jury deprived him of a fair trial and
> his right to due process of law;
>
> III.  He was denied his constitutional right to a fair trial where the trial court
> pierced the veil of judicial impartiality by taking on the role of the
> prosecutor; and
>
> IV.  The unredacted statement contained in the medical report was
> inadmissible, irrelevant, and more prejudicial than probative and the
> defense did not have an opportunity to challenge the evidence before it
> was admitted.

Respondent filed an answer to the amended petition in which she urges the

Court to dismiss the petition on grounds that Petitioner's first claim is not cognizable on

habeas review, his second claim is procedurally defaulted, and he did not exhaust state

4

remedies for his fourth claim.  Additionally, Respondent argues that, for the claims

which the state court addressed and rejected on the merits, the state court's ruling was

not contrary to, or an unreasonable application of, clearly established Supreme Court

precedent.

### III.  Standard of Review

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.' "

Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor,

529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of § 2254(d)(1)

permits a federal habeas court to 'grant the writ if the state court identifies the correct

governing legal principle from [the Supreme] Court's decisions but unreasonably applies

that principle to the facts' of petitioner's case."  Wiggins v. Smith, 539 U.S. 510, 520

(2003) (quoting Williams, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly,

> [w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, supra, at 102–103, 131 S.Ct. 770 (internal quotation marks omitted).

Woods v. Donald, 135 S.Ct. 1372, 1376 (2015) (per curiam). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

In simple terms, the Supreme Court has said that the standard of review is "difficult to meet" and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (quoting Harrington, 562 U.S. at 102, and Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). The Supreme Court has further said that a federal court must guard against "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010).

Finally, a federal habeas court must presume the correctness of state court

6

factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this

presumption only with clear and convincing evidence.  Warren v. Smith, 161 F.3d 358,

360-61 (6th Cir. 1998).

### IV.  Petitioner's Claims

### A.  "Bad Acts" Evidence

In his first and fourth claims, Petitioner alleges that the trial court erroneously

denied his motion for new trial after a substitute prosecutor disclosed at sentencing that

the trial prosecutor failed to redact KM's medical report.[1]  The medical report included a

statement that "[b]oth patient and mother state that this is not the first time patient has

been molested by perp."  The parties had agreed to redact that statement from the

medical report, but the trial prosecutor forgot to delete the statement before she

admitted the report in evidence and offered it to the jury.  (Sentencing Tr., 2-3, Mar. 8,

2011.)

Petitioner claims that the unredacted statement was inadmissible, irrelevant, and

prejudicial "bad acts" evidence, which deprived him of due process and his right to a fair

trial.  He contends that the evidence showed he was a bad person and that he acted in

---

[1] Respondent maintains that Petitioner failed to exhaust state remedies for his fourth claim because he raised the claim in the Michigan Supreme Court, but not in the Michigan Court of Appeals.  While it is true that, to be properly exhausted, each habeas claim must have been fairly presented to the state court of appeals and to the state supreme court, Wagner v. Smith, 581 F.3d 410, 414 (6th Cir. 2009), the exhaustion rule is not jurisdictional, Castille v. Peoples, 489 U.S. 346, 349 (1989), and Petitioner's fourth claim does not warrant habeas relief.  The Court therefore excuses the alleged failure to exhaust state remedies and proceeds to the merits of Petitioner's claims.  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

conformity with his bad character.  He further alleges that he was not given proper notice of the "bad acts" evidence or an opportunity to argue for its exclusion from the report.

### 1.  The State-Court Decisions

As noted above, defense counsel moved for a new trial when the substitute prosecutor brought the issue of the unredacted medical report to the trial court's attention at sentencing.  Defense counsel argued that the disputed sentence in the medical report was prejudicial and that the trial court could have given a curative jury instruction if counsel had known during trial that the unredacted report was being admitted in evidence.  The trial court denied the motion for new trial without elaboration. See id. at 3.

The Michigan Court of Appeals determined on direct appeal that the trial court did not abuse its discretion by denying Petitioner's motion for new trial.  The Court of Appeals noted that the inadvertently admitted evidence was highly relevant and would have been admissible under Mich. Comp. Laws § 768.27a, which states that, "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."[2]

As for the prosecutor's failure to give timely notice of intent to use the evidence, the Michigan Court of Appeals pointed out that Petitioner had not suggested any basis for objecting if notice had been given.  The Court of Appeals concluded that the lack of

---

[2]  "The listed offenses include the various forms of criminal sexual conduct." People v. Dobek, 732 N.W.2d 546, 567 n.16 (Mich. Ct. App. 2007).

notice did not have a significant effect on the proceedings and did not merit reversal of Petitioner's conviction.  The Court of Appeals further concluded that, given the amount of evidence supporting Petitioner's convictions, the single unredacted line in the medical report likely was not outcome determinative.

## 2.  Analysis

Petitioner is not entitled to habeas relief on this claim because "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003).  Consequently, "there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to' under [§ 2254(d)(1)]." Id. at 513.  Petitioner's personal disagreement with the state court's ruling on other "bad acts" evidence "is not cognizable on federal habeas review, inasmuch as it involves no constitutional dimension."  Bey v. Bagley, 500 F.3d 514, 523 (6th Cir. 2007).

Similarly, Petitioner's contention that the prosecutor circumvented the notice requirement of Michigan Rule of Evidence 404(b) and failed to satisfy the three-part admissibility test of People v. VanderVliet, 508 N.W.2d 114, 126 (Mich. 1992), and People v. Sabin, 614 N.W.2d 888, 895-96 (Mich. 2000), is not a basis for habeas relief. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and Rose v. Hodges, 423 U.S. 19, 21 (1975) ( per curiam)).  "[F]ederal habeas corpus relief does not lie for errors of state law."  Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (citing Pulley v. Harris, 465 U.S. 37, 41

(1984), and Hodges, 423 U.S. at 21-22).  The Court therefore declines to grant relief on Petitioner's first and fourth claims.  The claims are not cognizable on habeas review and do not warrant habeas relief.

### B.  The Prosecutor's Conduct

The second habeas claim alleges that the prosecutor's remarks during closing arguments deprived Petitioner of a fair trial and his right to due process of law. Petitioner contends that the prosecutor embellished the facts, vouched for her witnesses and evidence, injected her personal opinion into the proceedings, relied on facts not in evidence, and usurped the jury's fact-finding function.

### 1.  Procedural Default

Respondent argues that Petitioner's prosecutorial-misconduct claim is procedurally defaulted.  A procedural default is "a critical failure to comply with state procedural law."  Trest v. Cain, 522 U.S. 87, 89 (1997).  The doctrine of procedural default prohibits a federal court from reviewing the merits of a habeas petitioner's claims, including constitutional claims, if a state court declined to hear the claims because the petitioner failed to abide by a state procedural rule.  Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012).  An exception to the procedural-default doctrine applies if the prisoner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).

In this Circuit

"[a] habeas petitioner's claim will be deemed procedurally defaulted if each

10

of the following four factors is met:  (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default."  [Jalowiec v. Bradshaw, 657 F.3d 293, 302 (6th Cir. 2011)].  To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim."  Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

Henderson v. Palmer, 730 F.3d 554, 560 (6th Cir. 2013).

## 2.  Application of the Factors

In Michigan, defendants in criminal cases are required to preserve their claims for appeal by first making an objection in the trial court.  People v. Carines, 597 N.W.2d 130, 137-39 (Mich. 1999).  When there is no contemporaneous objection to prosecutorial misconduct or no request for a curative instruction regarding the prosecutor's misconduct, "review is limited to ascertaining whether plain error affected defendant's substantial rights."  People v. Brown, 755 N.W.2d 664, 679 (Mich. Ct. App. 2008) (citing People v. Callon, 662 N.W.2d 501, 513 (Mich. Ct. App. 2003)); see also People v. Meissner, 812 N.W.2d 37, 47 (Mich. Ct. App. 2011) (stating, "[w]e review claims of prosecutorial misconduct to determine whether the defendant received a fair trial.  Unpreserved arguments are reviewed for plain error that affected the defendant's substantial rights") (internal and end citations omitted).

Petitioner admits in his habeas petition that he did not object to the prosecutor's remarks at trial.  Amended Pet. for Writ of Habeas Corpus, at p. 32.  Thus, the first element of procedural default is satisfied.

The second element of procedural default is enforcement of a state procedural rule.  The Michigan Court of Appeals was the only state court to adjudicate Petitioner's

11

prosecutorial-misconduct claim in a reasoned opinion.  It reviewed Petitioner's claim for "plain error affecting a defendant's substantial rights" because Petitioner did not preserve the issue for appellate review.  Elizondo, 2012 WL 2335910, at *3.  A state appellate court's review for "plain error" constitutes enforcement of a state procedural rule.  Hinkle v. Randle, 271 F.3d 239, 244 (6th Cir. 2001) (citing Seymour v. Walker, 224 F.3d 542, 557 (6th Cir. 2000) (citing Paprocki v. Foltz, 869 F.2d 281, 284-85 (6th Cir. 1989)).  Consequently, the second element of procedural default is satisfied.

The third element of procedural default requires determining whether the state procedural rule was an adequate and independent state ground for denying review of a federal constitutional claim.  "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review."  Biros v. Bagley, 422 F.3d 379, 387 (6th Cir. 2005) (citing Abela v. Martin, 380 F.3d 915, 921 (6th Cir. 2004)).

"[T]he procedural rule requiring objection below to preserve an issue on appeal is both firmly established and regularly followed by Michigan state courts," Morgan v. Lafler, 452 F. App'x 637, 647 (6th Cir. 2011) (citing Carines, 597 N.W.2d at 138-39), and the Michigan Court of Appeals actually relied on the rule to foreclose relief in this case.  Therefore, the state appellate court's ruling was an adequate and independent state ground for denying review of Petitioner's constitutional claim.

The fact that the Court of Appeals also addressed the merits of Petitioner's claim "does not require [this Court] to disregard the state court's finding of procedural bar." Coe v. Bell, 161 F.3d 320, 330 (6th Cir. 1998).  As explained in Harris v. Reed, 489 U.S. 255 (1989),

12

> a state court need not fear reaching the merits of a federal claim in an <u>alternative</u> holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.  See <u>Fox Film Corp. v. Muller</u>, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [<u>Wainwright v.</u>] <u>Sykes</u> [433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.  In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

<u>Id</u>. at 264 n.10 (emphasis in original).

To summarize, Petitioner violated a relevant state procedural rule, the last state court to review his claim in a reasoned opinion enforced the rule, and the rule was an adequate and independent state ground for precluding review of Petitioner's federal claim.  Therefore, federal habeas review of Petitioner's prosecutorial-misconduct claim is barred unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider [his] claim[] will result in a fundamental miscarriage of justice."  <u>Coleman</u>, 501 U.S. at 750.

### 3.  Cause and Prejudice; Miscarriage of Justice

Petitioner has not asserted "cause" for his procedural default, and, in the absence of cause and prejudice, a petitioner can proceed with a procedurally defaulted claim only if he "demonstrate[s] that the failure to consider [his claim] will result in a fundamental miscarriage of justice.  A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' "  <u>Lundgren v. Mitchell</u>, 440 F.3d 754, 764 (6th Cir. 2006) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy

13

eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995).  "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence . . . any reasonable juror would have reasonable doubt."  House v. Bell, 547 U.S. 518, 538 (2006).

Petitioner has not produced any new evidence of actual innocence, and the evidence against him at trial was substantial.  Therefore, a miscarriage of justice will not result from the Court's failure to address Petitioner's prosecutorial-misconduct claim on the merits.  The claim is procedurally defaulted.

## C.  The Trial Court

In his third claim, Petitioner alleges that the trial court pierced the veil of judicial impartiality by taking on the role of the prosecutor during the prosecutor's cross-examination of him.  According to Petitioner, the trial court's questions bolstered the prosecution's case, revealed the court's bias, and gave the jury the impression that the court found Petitioner's testimony to be incredible.  Petitioner contends that the trial court's questions impeached his testimony, as opposed to, clarifying or explaining the testimony.

The Michigan Court of Appeals rejected Petitioner's claim, but Petitioner contends that the Court of Appeals minimized the significance of the trial court's inquiry. Petitioner asserts that the Court of Appeals failed to consider the number of times the trial court questioned Petitioner, the form and tone of the trial court's questions, and the fact that the questions assumed facts premised on bias.  Respondent, on the other hand, argues that the Supreme Court has not addressed the precise issue before the

14

Court and, therefore, under <u>Donald</u>, it cannot be said that the state appellate court's decision was contrary to, or an unreasonable application of, any Supreme Court decision.

## 1. Legal Framework

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." <u>Bracy v. Gramley</u>, 520 U.S. 899, 904-905 (1997) (internal and end citation omitted. "Trial judges have a wide latitude in conducting trials, but they must carefully preserve an attitude of impartiality and scrupulously avoid giving the jury an impression that the judge believes the defendant is guilty." <u>Harrington v. Iowa</u>, 109 F.3d 1275, 1280 (8th Cir. 1997) (quotation marks and citations omitted). "No matter what the evidence was against [the defendant], he had the right to . . . an impartial judge." <u>Tumey v. Ohio</u>, 273 U.S. 510, 535 (1927). Thus, the right to an unbiased judge is not subject to harmless error analysis. <u>Gomez v. United States</u>, 490 U.S. 858, 876 (1989) (quoting <u>Gray v. Mississippi</u>, 481 U.S. 648, 668 (1987)).

Nevertheless, a trial judge is not a mere moderator in a jury trial; he or she "is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." <u>Quericia v. United States</u>, 289 U.S. 466, 469 (1933).

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They <u>may</u> do so if they reveal an opinion that derives from an extrajudicial source; and they <u>will</u> do so if they reveal such a high degree of favoritism or

15

antagonism as to make fair judgment impossible. . . .  Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

Liteky v. United States, 510 U.S. 540, 555-56 (1994) (emphases in original).[3]  Further,

[i]n collateral proceedings, the test is "whether the errors alleged . . . could have rendered [the] trial fundamentally unfair."  Buckelew v. United States, 575 F.2d 515, 518 (5th Cir. 1978).  To violate a defendant's right to a fair trial, "a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree."  Daye v. Attorney General of New York, 712 F.2d 1566, 1572 (2d Cir. 1983), cert. denied, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

McBee v. Grant, 763 F.2d 811, 818 (6th Cir. 1985).

Matters of personal bias generally do not rise to a constitutional level.  Railey v. Webb, 540 F.3d 393, 400 (6th Cir. 2008) (citing Tumey v. Ohio, 273 U.S. 510, 523 (1927)).  To prevail on his claim, Petitioner must show "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused."  Ungar v. Sarafite, 376 U.S. 575, 588 (1964).

### 2.  The Disputed Interruptions

Petitioner complains of five instances in which the trial court interrupted the prosecutor's cross-examination to personally question him.  The Court addresses each instance below.

---

[3]  Although Liteky "addresses the statutory recusal standards for federal judges, see 28 U.S.C. § 455, [the Sixth Circuit Court of Appeals] has relied on the decision in assessing judicial-bias claims under the Due Process Clause . . . ."  Lyell v. Renico, 470 F.3d 1177, 1186 (6th Cir. 2006) (citing Alley v. Bell, 307 F.3d 380, 386 (6th Cir. 2002)).

**a.**

In the first instance, the trial court questioned Petitioner about his testimony on direct examination that he awoke from sleep when someone kissed him and that he was shocked to see he had his arms around K.M., because he thought that he was kissing his wife.  (Trial Tr., 114, Feb. 9, 2011.)  The trial court interrupted the prosecutor's subsequent cross-examination of Petitioner, saying:

> THE COURT:  (Interposing)  Well, let me ask you a question.  Wait a minute.  Let me ask you a question.
>
> THE WITNESS [Petitioner]:  Yes.
>
> THE COURT:  You said that you felt somebody kissing you, and then you heard your wife scream.
>
> THE WITNESS:  Right.
>
> THE COURT:  Okay.  Your wife is about how tall?
>
> THE WITNESS:  Um.  I don't know.
>
> THE COURT:  Okay.
>
> THE WITNESS:  Five, somethin'.  I don't know.
>
> THE COURT: Over five – over five, two, right?
>
> THE WITNESS:  I – I have no idea.
>
> THE COURT: Okay.  How much would you say she weighs?
>
> THE WITNESS:  (No response)
>
> THE COURT: Since you know how much you weigh?
>
> THE WITNESS:  Well, everybody knows how much I weigh, I'm big.
>
> THE COURT: I know.  No, but I'm saying you know how much you weight (sic), so how much does your wife weight (sic), about?

17

THE WITNESS:  (No response)

THE COURT: Over one, fifty?

THE WITNESS:  Probably.

THE COURT: Okay.   And the victim in this matter, [K.M.], weighed about how much during that time?

THE WITNESS:  I have no idea.

THE COURT:  Okay.  But probably less than your wife, is that correct?

THE WITNESS:  Probably.

THE COURT:  Okay.  Was she a little shorter than your wife?

THE WITNESS:  At the time, I didn't – you know, I was being awoke (sic) by a kiss.  I wasn't paying attention to height, weight.

THE COURT:  Okay.

THE WITNESS:  There was only one person that's ever come to room (sic) to even give me a kiss.

THE COURT:  Okay, but that's not my question to you.

THE WITNESS:  Yes.

THE COURT: She is much smaller than your wife, is that correct?

THE WITNESS:  Not much.

THE COURT: Okay, very good.  Go ahead.

(Id. at 119-21.)

Petitioner claims that the trial court's questions signaled to the jury that it was unreasonable for him to believe that it was his wife and not the minor victim who was in bed with him.  The Michigan Court of Appeals, however, interpreted the trial court's questions as "material questions" that were not asked by the attorneys.  The Court of

18

Appeals stated that Petitioner's "wife's height and weight [were] highly material in light of defendant's claim that he believed the person kissing him was his wife, an adult woman, and not the victim, an 11–year–old girl." Elizondo, 2012 WL 2335910, at *5.  The Court of Appeals concluded that, even though the trial court's questions may have damaged Petitioner's credibility, the questions were not improper and did not pierce the veil of judicial impartiality.

**b.**

The next instance of judicial questioning occurred when the prosecutor asked Petitioner about his conversation with Ms. Doss, who worked for Children's Protective Services.  Petitioner testified that he told Ms. Doss he did not do anything and that, from what he had heard, K.M. touched him, as opposed to him touching her.  The trial court interrupted, saying:

> THE COURT:  (Interposing)  Wait a minute.  Hold on for a minute. You said from what you heard.  Who did you hear that from?
>
> THE WITNESS:  Pardon me?
>
> THE COURT:  When you said that's what you heard, that the girl touched you?
>
> THE WITNESS: I heard that from my wife, who said that my – her hands were on my thing.  I– I did not know, because basically I waited until - -
>
> THE COURT:  (Interposing)  So, wait a minute.  Hold on for a minute.  So, your wife said that your hand – that [K.M.'s] hand was on your penis?
>
> THE WITNESS:  Yes.
>
> THE COURT:  You didn't – you didn't feel that?
>
> THE WITNESS:  No, I did not.

19

THE COURT:  But you felt that kiss?

THE WITNESS:  The kiss?  Yes, I did feel the kiss.

THE COURT:  Okay, go ahead.

(Trial Tr., 125-26, Feb. 9, 2011.)

Petitioner asserts that the trial court's question about what he felt assumed the very fact in question and seemed to discard his testimony.  The Michigan Court of Appeals stated that, although the trial court's question may have been

> tinged with a suggestion of disbelief, the question could also be viewed as an attempt to clarify defendant's testimony. The trial court limited its questions in scope only to clarify defendant's statement that he had only heard that the victim had touched him, but did not feel it. The fact that the trial court damaged defendant's credibility through its questioning does not render the questions improper.

Elizondo, 2012 WL 2335910, at *6.

### c.

The third disputed incident of judicial questioning occurred when the prosecutor resumed questioning Petitioner about his conversation with Ms. Doss, the Children's Protective Services worker.  The prosecutor asked Petitioner whether he knew it was more serious to put his finger in someone's vagina, as opposed to merely touching a person's genitals.  After a brief objection by defense counsel, which the trial court sustained, the prosecutor said, "[W]hen you spoke with Ms. Doss. . . ."  The trial court then interrupted and said:

THE COURT:  (Interposing)  No.  Let me ask you a question.

When you spoke to Ms. Doss, and she asked you about whether or not you put your penis in her – you heard her say that?

THE WITNESS:  Yes, I did.

20

THE COURT:  Okay.  And you responded no.

THE WITNESS:  I responded, no, I didn't touch her.

THE COURT:  Okay.  All right.  Because you believed that if you put your penis in a child, there was something wrong with that, right?

THE WITNESS:  I couldn't if I wanted to.  And if I did, I had – I had grown woman (sic) that couldn't handle it.  I'm sorry, but, you know,  I have been a large man for all my life.

THE COURT:  Okay, that's – okay.  Go ahead.  You can ask another question.

(Trial Tr., 130-31, Feb. 9, 2011.)  The Michigan Court of Appeals did not address these questions and answers on direct appeal.

**d.**

The fourth incident occurred when the prosecutor asked Petitioner whether he told the police following his arrest that "this wasn't a big deal, except that [his] wife walked in on [him]."  (Id. at 135.)  Petitioner responded to the prosecutor's question by saying that, in his opinion, "something a child does, even if it's wrong, . . . it can be corrected without sitting there and making a big thing out of it."  (Id.)  The trial court then said:

THE COURT:  (Interposing)  Making a big thing out of it?

THE WITNESS:  Correct.

THE COURT:  What do you mean about that?

THE WITNESS:  Well, I mean when a – when a child does something that's peculiar, or strange, or something they shouldn't have did (sic), you can't help a children's (sic) mind, what they're doing.  I – we were all children, once.  We all got in trouble once in a great while.  But, you know, I couldn't explain what happened.

[THE PROSECUTOR]:  The question I had was --                    . . . .

21

THE COURT:  (interposing)  But wait a minute.  You didn't think it was appropriate for the police to handle it because this child was just basically acting out a fantasy?

THE WITNESS:  I believe it was something that the –her mother, and the rest of the family, could sit there and discuss, and maybe straighten it out a lot better.  I --

THE COURT:  (Interposing)  Than the police?

THE WITNESS:  The police were involved.

THE COURT:  You think that the family could have done a better job than the police?

THE WITNESS:  Well, I believe – I believe that it wouldn't have cost the state that much.  I wouldn't have been tooken (sic) away from my family as long as I was.

(Id. at 135-36.)

Petitioner contends that the trial court's comments demonstrated a disregard for his testimony that it was the child who acted inappropriately and, therefore, he did not find it necessary to call the police.  But the Michigan Court of Appeals determined that

[t]he trial court's questions were not such that they would arouse suspicion in the jury.  The trial court was merely asking defendant to elaborate on his statement.  And, from the answers given by defendant, it was clear that defendant was trying to explain that he was innocent and felt the incident was a kiss and touching undertaken by a child that could have been addressed by the family.  Again, similar to the previous analyses, the trial court was attempting to elicit from defendant the meaning behind his statement that the incident did not warrant the making of a "big thing."

Elizondo, 2012 WL 2335910, at *6.

### e.

The fifth and final incident of alleged judicial misconduct occurred a few questions later when the prosecutor asked Petitioner whether he ever told his wife that he thought it was her in bed with him.  Petitioner responded that he had tried to tell his

22

wife, but that she would not listen to him.  The trial court then said:

> THE COURT:  Well, wait a minute.  Hold on for a minute.

> You said that you tried to tell your wife.  But didn't you say or just testify that your wife told you that [K.M.'s] hand was on your penis?

> THE WITNESS:   That is correct.

> THE COURT:  Okay.  Go ahead.

(Trial Tr., 137-38, Feb. 9, 2011.)  The Michigan Court of Appeals stated that, "[t]o the extent that the question could be deemed to exhibit disbelief on the trial court's part or arouse suspicion in the jury regarding defendant's credibility, the substantial amount of evidence against defendant excluding the trial court's question renders the error harmless."  Elizondo, 2012 WL 2335910, at *6.

### 3.  Application

The excerpts of trial quoted above indicate that the trial court was either seeking clarification from Petitioner or trying to elicit the truth.  "No Supreme Court precedent holds it unconstitutional for a trial judge to seek clarification from witnesses at trial." Wenglikowski v. Jones, 306 F. Supp. 2d 688, 695 (E.D. Mich. 2004).  A trial judge's function, moreover, is

> to conduct the trial in an orderly way with a view to eliciting the truth and to attaining justice between the parties.  It is [the court's] duty to see that the issues are not obscured and that the testimony is not misunderstood. [The court] has the right to interrogate witnesses for this purpose.

 Knapp v. Kinsey, 232 F.2d 458, 466 (6th Cir.1956).

Furthermore, in a similar case, not on habeas review, where the trial court actively injected himself in a defendant's trial, the Sixth Circuit declined to grant a new trial even though the trial court interrupted counsel twenty-eight times during a relatively

short proceeding.  See United States v. Tilton, 714 F.2d 642 (6th Cir. 1983).  The Sixth

Circuit stated in Tilton that, even though the trial court's questioning "went beyond that

generally expected of one who is to take on the role of a neutral arbiter," the Sixth

Circuit was "unable to say that it so clearly crossed the line to reach that area of

impermissible and prejudicial behavior which would warrant reversal of the appellant's

conviction."  Id. at 644.  The reason for this conclusion was "principally because the

interruptions appeared to go in both directions, affecting the defendant and the

prosecution."  Id. (emphasis in original).

In Petitioner's case, the trial court interrupted and questioned prosecution

witnesses as well as Petitioner.  See, e.g., Trial Tr., 25-29, 39, and 44, Feb. 9, 2011 (the

trial court's questioning of K.M.); id. at 68, 77, 80-81 (the trial court's interruptions and

questions directed to Petitioner's wife Melissa); id. at 89-90, 92, 97 (the trial court's brief

interruptions during the questioning of Ms. Doss, the Children's Protective Services

worker; id. at 101-03 (the trial court's interruption of the direct examination of police

officer Craig Cieszkoski).  Although the trial court's questioning of Petitioner was more

extensive than the court's questioning of prosecution witnesses, the Sixth Circuit

concluded in Tilton that "the degree of balancing done . . . was sufficient to avoid undue

prejudice."  Tilton, 714 F.2d at 644 n.2.  The Sixth Circuit was "unconvinced that the trial

judge's actions likely indicated the kind of favoritism toward the prosecution which could

have swayed the jury's verdict."  Id.

The same is true here.  The trial court's questions did not reveal "such a high

degree of favoritism or antagonism as to make fair judgment impossible."  Liteky, 510

U.S. at 555.  Nor was the trial court's intervention so substantial or excessive as to

deprive Petitioner of a fair trial.

Significantly, the trial court's manner of questioning Petitioner may have been improper and even wrong, but a habeas court's role is not to correct a state court's errors. See Donald, 135 S. Ct. at 1376 (stating that "[f]ederal habeas review . . . exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal' "); see also Williams, 529 U.S. at 411 (stating that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause . . . , a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").  And even a strong case for relief does not mean that the Michigan Court of Appeals conclusion –  that the trial court did not pierce the veil of judicial impartiality – was unreasonable.  Harrington, 562 U.S. at 102.

The state trial court's questions and intervention at Petitioner's trial did not result in an extreme malfunction of the criminal justice system, and the state appellate court's decision was not objectively unreasonable.  Consequently, Petitioner is not entitled to relief on the basis of his judicial bias claim.

## V.  Conclusion

For the reasons stated above, the decision of the Michigan Court of Appeals was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  The state court's decision also was not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  Harrington, 562 U.S. at 103.  Accordingly, the

25

petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED**.

## VI. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "It is consistent with § 2253 that a [certificate of appealability] will issue in some instances where there is no certainty of ultimate relief.  After all, when a [certificate of appealability] is sought, the whole premise is that the prisoner 'has already failed in that endeavor.' "  Miller-El, 537 U.S. at 337 (quoting Barefoot v. Estelle,  463 U.S. 880, 893 n.4 (1983)).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "[A] claim can be debatable even though every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that [the] petitioner will not prevail."  Miller-El, 537 U.S. at 338.

26

Reasonable jurists could debate the Court's resolution of Petitioner's judicial-bias claim.  Therefore, a certificate of appealability may issue on claim three.

The Court declines to grant a certificate of appealability on Petitioner's remaining claims because reasonable jurists would not debate the Court's assessment of Petitioner's first and fourth claims, which allege non-cognizable claims.  As for claim two (prosecutorial misconduct), reasonable jurists would not find the Court's procedural-default ruling incorrect, nor conclude that Petitioner has raised a valid claim of the violation of a constitutional right.  Thus, a certificate of appealability is denied as to claims one, two, and four.

**SO ORDERED**.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: July 13, 2015